UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARIO WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-21-550-G |
| ) | |
| T. HALE, CSO III, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Mario Williams, a state inmate appearing pro se, herein brings federal civil rights claims pursuant to 42 U.S.C. § 1983. In accordance with 28 U.S.C. § 636(b)(1), the matter was referred to Magistrate Judge Gary M. Purcell for preliminary review.[1]

Plaintiff filed a Complaint (Doc. No. 1) on May 27, 2021, identifying as Defendant T. Hale, a prison official sued in his individual and official capacities. Defendant filed a motion to dismiss, to which a response and a reply were submitted. *See* Doc. Nos. 27, 29, 30, 31.

Judge Purcell issued a Report and Recommendation as to the motion to dismiss. *See* R. & R. (Doc. No. 32). Each party timely filed an Objection to the R. & R. *See* Def.'s Obj. (Doc. No. 33); Pl.'s Obj. (Doc. No. 34). Neither party responded to the other's Objection. Pursuant to controlling authority, the Court reviews de novo the portions of the

---

[1] The case is currently referred to Magistrate Judge Amanda Maxfield Green. *See* Doc. No. 42.

R. & R. to which specific objections have been made. *See United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

I.   *Plaintiff's Allegations*

As outlined in the R. & R., Plaintiff's claims arise from an incident that transpired at the former North Fork Correctional Center in Sayre, Oklahoma. Plaintiff alleges that he filed an administrative grievance on April 26, 2020, complaining that his Ramadan meals were being served late in the evening or not at all. *See* Compl. at 9. On or about May 3, 2020, Defendant brought Plaintiff his Ramadan meal an hour and a half before the time Plaintiff could break his religious fast. *Id.*; *see* R. & R. at 2 n.1. When Plaintiff tried to explain to Defendant that he had brought the meals too early, Defendant replied, "I don't care. Since you guys want to complain to the higher-ups about receiving the meals too late, you'll receive them early." Compl. at 9.

Plaintiff alleges that as he stood in the doorway of his cell holding his meal and that of his cellmate, Plaintiff asked Defendant if they would be allowed to warm their meals in the microwave when they broke their fast. *See id.* at 9. Defendant told Plaintiff that other prison officials had told Defendant not to allow Plaintiff to use the microwave. *Id.* Still standing in front of his cell doorway, Plaintiff asked Defendant to radio one of those officials for verification. *Id.* at 10. Defendant refused, took out his canister of pepper spray, and ordered Plaintiff "to go back in [his] cell." *Id.*

Plaintiff states that while he was "standing in front of [his] cell with the two meals in [his] hand," he explained to Defendant that he was not refusing to go back in his cell but "just want[ing]" Defendant to radio another official. *Id.* When the other inmates saw the

pepper spray, they "start[ed] yelling and kicking on the doors." *Id.*  Plaintiff "turned to calm [his] neighbor down" and, when Plaintiff turned his attention back to Defendant, Defendant sprayed Plaintiff in the face, eyes, and mouth with pepper spray. *Id.*

Plaintiff states that he had trouble breathing because of the pepper spray combined with his asthma. *See id.*  He alleges that another prison official took him outside to get some air and then to the showers for decontamination. *See id.*  During the decontamination process, that official asked Plaintiff why Plaintiff had not called him about using the microwave. Plaintiff explained he was trying to get Defendant to do just that when Defendant deployed the pepper spray. *See id.* at 10-11.

Plaintiff alleges that he was later taken for medical treatment but "was unable to sleep for at least 24 hrs due to the continued burning" from the pepper spray. *Id.* at 11. "For [his] next 3 showers, the water reactivated the pepper spray in [his] face, chest and arms[,] which left [him] in pain and anguish for those days." *Id.*  According to Plaintiff, Defendant then filed a false disciplinary charge against him based on Plaintiff's alleged refusal to enter his cell and the charge was later dismissed. *See id.*

II.   *The Report and Recommendation*

Plaintiff brings claims against Defendant pursuant to 42 U.S.C. § 1983 for retaliation in violation of the First Amendment and for excessive force in violation of the Eighth Amendment. *See id.* at 7-8, 9, 15; R. & R. at 5 n.2. Defendant seeks dismissal of the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Def.'s Mot. to Dismiss at 2-13.

Judge Purcell first addressed Plaintiff's claims against Defendant in his official

3

capacity and concluded that they were subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). *See* R. & R. at 7-8. No party objects to this aspect of the R. & R., and the undersigned concurs that dismissal of the official-capacity claims is proper.[2]

Next, the R. & R. considered Defendant's assertion of qualified immunity and found that he was not entitled to qualified immunity at this stage of proceedings. *See id.* at 8-9. Again, no objection was raised, and the undersigned finds likewise.

Judge Purcell then considered, and rejected, Defendant's argument that Plaintiff's claims should be dismissed due to Plaintiff's failure to exhaust administrative remedies prior to bringing this lawsuit. *See id.* at 9-11. In so doing, Judge Purcell noted that Defendant was expressly advised he could raise this argument through a limited motion for summary judgment but instead relied upon a motion to dismiss. *See* R. & R. at 9 n.1 (citing Order of Feb. 15, 2022 (Doc. No. 16)).

Plaintiff objects to this approach, arguing that Defendant should have addressed exhaustion through a summary-judgment motion. *See* Pl.'s Obj. at 1-2. The fact that exhaustion may be addressed through a summary-judgment motion does not preclude it from being raised through a motion to dismiss. And Judge Purcell's choice to consider Defendant's argument under the standard for a motion to dismiss, rather than to convert Defendant's motion to one for summary judgment, resulted in a more favorable standard for Plaintiff. *See* R. & R. at 9 (noting that in evaluating the Motion to Dismiss "the Court

---

[2] Although the R. & R. recommends that this dismissal be made with prejudice to refiling, "dismissals for lack of jurisdiction should be without prejudice." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

must accept Plaintiff's allegations as true"). Judge Purcell relied on Plaintiff's own pleading, rather than "matters outside the pleading," in considering the exhaustion argument, as is proper under Rule 12(b)(6). Fed. R. Civ. P. 12(d); *see* R. & R. at 9-10. Plaintiff's objection is thus overruled.

The R. & R. next considered Plaintiff's individual-capacity constitutional claims and rejected Defendant's argument that they should be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See* R. & R. at 11-16; *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) ("[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

As to Plaintiff's retaliation claim, "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." *Dawson v. Audet*, 636 F. App'x 753, 755 (10th Cir. 2016) (internal quotation marks omitted). "In particular, officials may not retaliate against prisoners for filing administrative grievances." *Id.* To establish a claim of unlawful retaliation, Plaintiff must show: (1) he "was engaged in constitutionally protected activity"; (2) Defendant caused Plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) Defendant's "action was substantially motivated as a response to [Plaintiff's] exercise of constitutionally protected conduct." *Id.* (internal quotation marks omitted).

Defendant's Objection challenges Plaintiff's pleading of the second and third elements of a retaliation claim. Regarding the second element, Defendant argues:

5

"Plaintiff's allegations indicate only that his Ramadan meal was delivered early because he filed a grievance complaining that his meal had been delivered late in the past. . . . [D]elivering a meal early is not sufficient to chill a person of ordinary firmness from continuing to practice his religion or from filing a grievance." Def.'s Obj. at 1. This objection is meritless. The Complaint clearly cites as the retaliatory chilling injury *both* the late meal delivery *and* Defendant's contemporaneous pepper-spraying of Plaintiff in the "face, eyes," and "mouth," as well as Defendant's filing of a false disciplinary charge. Compl. at 10; *see id.* at 11-12 ("Plaintiff asserts, due to [my] exerci[s]ing my rights to file a grievance . . . concerning receiving my Ramadan meals on time, [Defendant] retaliated against me by saying 'You guys want to complain to the higher-up' . . . , then assaulting me with the pepper spray, and then by filing the charges." (second omission in original)). As noted in the R. & R., "[h]aving to eat a cold meal might not 'chill' a person of ordinary firmness," but "[b]eing sprayed with pepper spray . . . might be enough." R. & R. at 12; *see Abay v. City of Denver*, 445 F. Supp. 3d 1286, 1292 (D. Colo. 2020).

Defendant also challenges Plaintiff's pleading of the third element, arguing that Plaintiff's allegations show that Defendant used the pepper spray "to enforce order in the facility," not as a retaliatory act. Def.'s Obj. at 1. Relevant to this element, Plaintiff specifically alleges that the spraying occurred only about one week after Plaintiff filed the grievance and that, during the incident, Defendant expressly mentioned the grievance to Plaintiff. *See* Compl. at 9. Taking these well-pleaded allegations as true, Plaintiff has sufficiently shown that "but for the retaliatory motive, the incidents . . . would not have taken place." *Dawson*, 636 F. App'x at 756 (internal quotation marks omitted).

6

Defendant's proffering of a different, proper motive for spraying Plaintiff indicates a material factual dispute that is not properly resolved on a Rule 12(b)(6) motion.

To establish his claim of excessive force against Defendant in violation of the Eighth Amendment, Plaintiff must show, among other elements, that Defendant "ha[d] a culpable state of mind," such that he acted "with deliberate indifference to inmate health and safety." *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001). In other words, the Court asks whether Defendant applied force "in a good-faith effort to maintain or restore discipline" or "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

Defendant argues that Plaintiff's allegations fail to show that Defendant acted with deliberate indifference because they show that Defendant's use of pepper spray was "justifiabl[e]," given that Plaintiff had not returned to his cell as ordered, that Plaintiff did not take affirmative steps to deescalate the situation, and that other inmates were yelling and kicking doors. Def.'s Obj. at 2-3. Taken in the light most favorable to Plaintiff, however, the Complaint's allegations show that instead of calling other officials to assist or otherwise attempting to resolve the incident without violence, Defendant actuated the pepper spray and aimed it directly at Plaintiff's face. The R. & R. found—and Defendant does not dispute—that the status of Plaintiff's unit "on lockdown" made it unlikely that Defendant was in danger of violence from Plaintiff or the other inmates. R. & R. at 15. Considering the allegations in their entirety, the Complaint plausibly pleads that Defendant deliberately applied excessive force without a reasonable disciplinary justification in violation of the Eighth Amendment. Dismissal therefore is not warranted under Federal

Rule of Civil Procedure 12(b)(6).

## CONCLUSION

Accordingly, the Report and Recommendation (Doc. No. 32) is ADOPTED as modified. Defendant's Motion to Dismiss (Doc. No. 27) is GRANTED IN PART and DENIED IN PART. Specifically:

- Plaintiff's official-capacity claims are dismissed without prejudice pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

- Plaintiff's individual-capacity claims remain pending for disposition.

- Plaintiff's Motion to Object (Doc. No. 29) is DENIED AS MOOT.

This matter remains referred to Judge Green in accordance with the previous referral order.

IT IS SO ORDERED this 8th day of April, 2024.

_[signature]_
CHARLES B. GOODWIN
United States District Judge